1  Victor J. Sandoval
   **ALMEIDA LAW GROUP LLC**
2  111 W. Ocean Blvd, Suite 426
   Long Beach, CA 90802
3  562-534-5907
   victor@almeidalawgroup.com
4
5  *Counsel for Plaintiffs & Proposed Classes*

6              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
7

8  LESLIE COOPER and KATRINA          Case No.
   PEOPLES, on behalf of themselves
9  and all others similarly situated,  **CLASS ACTION COMPLAINT**

10    Plaintiffs,

11    vs.                               1.  VIOLATION OF CALIFORNIA'S FALSE
                                            ADVERTISING LAW, BUS. & PROF.
12                                          CODE § 17500 *et. seq.*
   HUME HEALTH CORP.,                   2.  VIOLATION OF CALIFORNIA'S
13                                          CONSUMER LEGAL REMEDIES ACT,
                                            CIV. CODE § 1750 *et. seq.*
14    Defendant.                        3.  VIOLATION OF CALIFORNIA'S
                                            UNFAIR COMPETITION LAW, CAL.
15                                          BUS. & PROF. CODE § 17200, *et. seq.*
                                        4.  BREACH OF CONTRACT
16                                      5.  BREACH OF EXPRESS WARRANTY
                                        6.  BREACH OF IMPLIED WARRANTY
17                                      7.  QUASI-CONTRACT/UNJUST
                                            ENRICHMENT
18                                      8.  NEGLIGENT MISREPRESENTATION
                                        9.  INTENTIONAL MISREPRESENTATION
19

20

21                                      **DEMAND FOR JURY TRIAL**

22

23

24

25

26

27

28

-1-
CLASS ACTION COMPLAINT

Plaintiffs Leslie Cooper and Katrina Peoples ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action lawsuit against Hume Health Corp. ("Hume" or "Defendant") and allege, upon personal knowledge as to their own actions and their counsel's investigation and upon information and good faith belief as to all other matters, as follows:

## I.    INTRODUCTION

1.    Advertised "sale" prices are important to consumers. Consumers are more likely to make purchases if they think that they are getting a discount. Further, if consumers think a discounted price will not last, they are likely to buy immediately, rather than wait, or comparison shop, and ultimately buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake sale—that is, one with fake regular prices, fake discounts, and fake expirations—is deceptive and illegal.

3.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely claiming that a product is on sale, when it is not.

4.    Moreover, Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501.

5.    Accordingly, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular type of fake discount—where the advertised former price is not the prevailing price during the specified timeframe.

6.    Further, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and

CLASS ACTION COMPLAINT

specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

7.    Additionally, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," such as ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not so. 16 C.F.R. § 233.1.

8.    Fake sales violate these laws.

9.    Fake sales also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

10.    Defendant Hume sells and markets fitness products (the "Products") through the Hume brand and on the website, www.humehealth.com (the "Website").

11.    Defendant lists purported regular prices and advertises purported limited-time discounts from those regular prices. These include discounts offering "X% off" and "X% off sitewide" that are purportedly time-limited. These discounts are made available by using a discount code, such as "BF50" or are automatically applied to the Products sitewide. Defendant also advertises that its Products have a lower discount price as compared to a higher, regular price shown in grey and/or strikethrough font. Examples are shown below:

*[Remainder of page intentionally blank]*

CLASS ACTION COMPLAINT



12.    Far from being time-limited, however, Defendant's discounts are routinely available. As a result, everything about Defendant's price and purported discount advertising is false. The regular prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true

-4-

discounts the customer is receiving and are often not discounts at all. Nor are the purported discounts time-limited—quite the opposite, they are consistently available.

13.     As described in greater detail below, Plaintiffs bought items from Defendant from the Website. When Plaintiffs made their purchases, Defendant advertised that a sale was going on, and so Defendant represented that the Products Plaintiffs purchased were being offered at a steep discount from their purported "regular" prices that Defendant advertised. And based on Defendant's representations, Plaintiffs believed that they were purchasing Products whose regular price and market value were the purported "regular" price that Defendant advertised, that they were receiving a substantial discount, and that the opportunity to get that discount was time-limited. These reasonable beliefs are what caused Plaintiffs to buy from Defendant when they did.

14.     However, the representations Plaintiffs relied on were false. The purported "regular" prices were not the true regular prices, the purported "discounts" were not the true discounts, and the discounts were ongoing—not time-limited. Had Defendant been truthful, Plaintiffs and other consumers like them would not have purchased the Products, or would have paid less for them.

15.     Plaintiffs bring this case on behalf of themselves and the other customers who purchased Defendant's Products.

## II.     PARTIES

16.     Plaintiff Leslie Cooper is and was at all relevant times, an individual and resident of Barstow in San Bernadino County, California. Ms. Cooper intends to remain in California and makes her permanent home there.

17.     Plaintiff Katrina Peoples is and was at all relevant times, an individual and resident of Westminster in Orange County, California. Ms. Peoples intends to remain in California and makes her permanent home there.

18.     Hume is a corporation organized under the laws of Delaware located at 1007 North Orange Street, Wilmington, DE 19801.

## III.    JURISDICTION AND VENUE

19.    The exercise of federal subject matter jurisdiction is also appropriate pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) there are more than 100 members of the Class, (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iv) none of the exceptions apply to this action.

20.    This Court has personal jurisdiction over Defendant because it conducts business in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the judicial district.

21.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Products to consumers in this District, including Plaintiffs. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sales to Plaintiffs.

## IV.    FACTUAL ALLEGATIONS

### A.    DEFENDANTS FAKE PRICES AND FAKE DISCOUNTS

22.    Defendant manufactures, distributes, markets, and sells the Products.

23.    Defendant creates the false impression that its Products' regular prices are higher than they truly are.

24.    On its website and in advertisements, Defendant consistently advertises steep discounts on its Products. These discounts offer "X%" off of the regular prices Defendant advertises. These discounts are typically deep discounts, such as "50%" off or "40%" off.

25.    Even though in truth these discounts run in perpetuity, Defendant claims they are only valid for a limited time.

26. Defendant advertises these discounts extensively: on social media advertisements; on search engine advertisements; on attention-grabbing banners; on products listing pages, next to images of each Product; on the individual product pages for each Product, and during checkout. Example screenshots are provided on the following pages:





CLASS ACTION COMPLAINT

27.     Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely. For example, as depicted below, Defendant represents that its sales are "Limited Time Only" or are "Flash Sales." To reasonable consumers, this means that after the specified date, Defendant's Products will no longer be on sale and will retail at their purported regular price.



28.     However, immediately after each purportedly time-limited sale ends, Defendant generates another similar discount.

29.     For example, on January 12, 2026, Defendant advertised a purportedly time-limited sale that "Ends 20.Jan.2026."



Captured January 12, 2026

30.    However, on the day after the time-limited sale was supposed to have ended, Defendant advertised the exact same sale.



Captured January 21, 2026

31.    To confirm that Defendant consistently offers discounts off of purported regular prices, Plaintiff's counsel performed an investigation of Defendant's

advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[1] Defendant's sales are persistent.



---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/



CLASS ACTION COMPLAINT



32.    Based on Defendant's advertisements, reasonable consumers reasonably believe that the regular prices Defendant advertises are Defendant's former prices—the price at which the goods were actually offered for sale before the limited-time offer went into effect.

33.    Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers had to pay the regular price to get the item and did not have the opportunity to get a discount from that regular price

34.    Reasonable consumers also reasonably believe that the regular prices Defendant advertises represent the true market value of the Products and are the prevailing prices for those Products.

35.    Reasonable consumers also reasonably believe that they are receiving reductions from those regular prices in the amounts advertised.

36.    In truth, however, Defendant persistently offers discounts off of the purportedly "regular" prices it advertises.

37. As a result, everything about Defendant's price and purported discount advertising is false.

38. The regular prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products.

39. Defendant's Products are consistently available for less than that, and customers did not have to pay that amount to get those items.

40. The purported discounts Defendant advertises are not the actual discount the customer is receiving, and are often not a discount at all.

41. Further, the purported discounts are not limited in time or expiring soon—quite the opposite, they are consistently available.

**B.      DEFENDANT'S REGULAR PRICES WERE NOT THE PREVAILING PRICES**

42. As explained above, Defendant primarily sells its Products through its Website. Some Products are also available through a small number of third-party websites and retailers, including Amazon.

43. Similar to the prices offered on Defendant's Website, Defendant's Products are available from third-party websites and retailers for prices below Defendant's listed regular prices. For example, as discussed above, from at least January 12 to January 21, 2025, Defendant advertised that the Hume Health Body Pod with a listed regular price of $349 for a supposed 50% discounted price of approximately $174.50.

*[Remainder of page intentionally blank]*

-13-

1    44.    At the same time, the Hume Body Pod was offered on Amazon for $183:



*Captured January 12, 2026*

45.    Similarly, as of January 12, 2025, Amazon's price history feature indicated that (i) the 90-day median price of the Hume Health Body Pod was $202, and (ii) the Hume Health Body Pod had not been offered for the purported listed regular price of $349 in the preceding 90 days:



*Captured January 12, 2026*

-14-

CLASS ACTION COMPLAINT

46.    In short, as the above shows, Defendant's Products are regularly available from third-party websites and sellers for less than the purported regular prices that Defendant's Website advertises.

47.    Indeed, prices charged on third-party websites and by third-party retailers will converge on Defendant's price because the Products are sold in an e-commerce market and Defendant, the manufacturer, sells the Products directly to consumers through its publicly available Website.

48.    Moreover, on information and belief, the Products are primarily sold through Defendant's branded Website.

49.    Indeed, if consumers are searching for a Product, they will go to Defendant's Website. For example, if a consumer Googles "Hume Health Pod," the first several results will be related to the Website.

50.    Accordingly, because the Products are most commonly sold on Defendant's website, they are most commonly sold for the discounted prices routinely available on Defendant's Website.

51.    Moreover, as discussed above, the Products are regularly available on Amazon—one of the world's largest retailers of consumer goods—for far lower prices than Defendant's listed regular prices.

52.    Thus, between sales on Defendant's website and Amazon, the Products routinely and predominantly sell for prices below Defendant's purported regular prices, and the listed regular prices are not the prevailing market rates.

**C.    DEFENDANT'S    ADVERTISEMENTS    ARE    UNFAIR, DECEPTIVE, AND UNLAWFUL.**

53.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

54.    Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

55.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

56.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

57.    And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

58.    Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises "regular" prices that are not its true "regular" prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods that had certain former prices and/or market values without the intent to sell goods that had those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

## D.    DEFENDANTS ADVERTISEMENTS HARM CONSUMERS.

59.    Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the "regular" prices at which Defendant usually sells its Products; that these are the former prices that Defendant sold its Products at before the time-limited discount was introduced.

60.    Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

61.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

62.    Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase." [2] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

63.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[4]

_____

[2] *E.g.,* Khalid Saleh, *How Discounts Affect Online Consumer Buying Behavior,* https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/, archived at https://perma.cc/G9P5-AWL5

[3] *E.g., RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers,* https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html, archived at https://perma.cc/34N6-N8SZ

[4] *E.g.,* Marcus Taylor, *How to Effectively Create Urgency in Sales*, https://cxl.com/blog/creating-urgency/, archived at https://perma.cc/XL2D-ABPE

-17-

64.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiffs and the class paid more for the Products they bought than they otherwise would have.

**E.     PLAINTIFFS     WERE     MISLEAD     BY     DEFENDANT'S MISREPRESENTATIONS**

65.     On April 11, 2025, Plaintiff Leslie Cooper ("Cooper") purchased a Body Pod from Defendant's website. She made this purchase while living in Barstow, California. In the email order confirmation that Defendant sent to Cooper, Defendant represented the Body Pod had a regular price of $352.00, and that Cooper was receiving a discount of $169.00. Defendant represented that the Product had a certain regular price and that Cooper was receiving a substantial discount for the items that she purchased. Cooper's email confirmation represented that Cooper's total discounted price was $197.00 after tax.



Order summary

| | | |
|---|---|---|
| The Body Pod × 1 | | ~~$352~~ |
| 35% OFF ( $123) | | $229 |
| Subtotal | | $229 |
| Order discount | | -$46 |
| NEW20 (-$46) | | |
| Shipping | | $0 |
| Taxes | | $14 |
| Total | | **$197 USD** |
| Total paid today | | **$0 USD** |
| | | You saved $169 |

CLASS ACTION COMPLAINT

66.    On July 5, 2025, Plaintiff Katrina Peoples ("Peoples") purchased a Body Pod from Defendant's Website. Similar to the email order confirmation that Defendant sent to Cooper, in the confirmation sent to Peoples, Defendant represented that Peoples was receiving a discount of $169.00. Defendant had represented that the Product had a "regular" price of $352.00 and that Cooper was receiving a substantial discount for the item that she purchased. Cooper's email confirmation represented that Cooper's total discounted price was $200.15 after tax. On July 15. 2025, Peoples purchased a Hume Band from Defendant's Website. Similarly, in the confirmation sent to Peoples, Defendant represented that Peoples was receiving a discount of $217.00. Defendant had represented that the Product had a "regular" price of $356.00 and that Cooper was receiving a substantial discount for the item that she purchased. Cooper's email confirmation represented that Cooper's total discounted price was $198.12 after tax. She made these purchases while living in Westminster, California.

67.    Plaintiffs read and relied on Defendant's representations on the Website and email confirmations, specifically that the Products were being offered at a discount for a limited time and had the "regular" prices listed above. Based on Defendant's representations described and shown above, Plaintiffs reasonably understood that the Products they purchased regularly (and before the promotion Defendant was advertising) retailed at the published "regular" price, that this "regular" price was the market value of the Products that they were buying, that she was receiving the advertised discount as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion). They would not have made the purchases if they had known that the Products were not discounted as advertised, and that they were not receiving the advertised discount.

68.    Plaintiffs face an imminent threat of future harm. Plaintiffs would purchase Products from Defendant again in the future if they could feel sure that Defendant's "regular" prices accurately reflected Defendant's former prices and the

-19-

market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's "regular" prices, discounts, and sales are not false or deceptive. Accordingly, Plaintiffs are unable to rely on Defendant's advertising in the future, and so cannot purchase Products they would like to purchase.

## F.    DEFENDANT BREACHED ITS CONTRACT.

69.    When Plaintiffs purchased and paid for the Products she bought as described above, she accepted offers that Defendant made, and thus, a contract was formed at the time that she made a purchase. The offer was to provide Products having a particular listed regular price and market value, and to provide that Product at the discounted price advertised on the website.

70.    Defendant's website and email confirmations list the market value of the items that Defendant promised to provide (which are shown above). Defendant agreed to provide a discount equal to the difference between the regular prices listed by Defendant, and the prices paid by Plaintiffs (also shown above). For example, Defendant offered to provide (among other things) the Body Pod with a market value of $352, for a discounted price of $183 plus tax; and to provide a discount of $169.

71.    The regular price and market value of the items Plaintiffs would receive, and the amount of the discount she would be provided off of the regular price of those items, were specific and material terms of the contract.

72.    Plaintiffs performed their obligations under the contracts by paying for the items they purchased.

73.    Defendant breached its contracts by failing to provide Plaintiffs with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.

//

//

//

1

### G.    THERE IS NO ADEQUATE REMEDY AT LAW.

2    74.    Plaintiffs seek damages and, in the alternative, restitution. Plaintiffs are

3    permitted to seek equitable remedies in the alternative because he has no adequate

4    remedy at law.

5    75.    A legal remedy is not adequate if it is not as certain as an equitable

6    remedy. The elements of Plaintiffs' equitable claims are different and do not require

7    the same showings as Plaintiffs' legal claims.

8    76.    For example, Plaintiffs' FAL claim under Section 17501 (an equitable

9    claim) is predicated on a specific statutory provision, which prohibits advertising

10   merchandise using a former price if that price was not the prevailing market price

11   within the past three months. Cal. Bus. & Prof. Code § 17501.

12   77.    Plaintiffs may be able to prove these more straightforward factual

13   elements, and thus prevail under the FAL, while not being able to prove one or more

14   elements of their legal claims.

15   78.    As a second example, to obtain damages under the CLRA, a plaintiff

16   must show that they complied with the CLRA's notice requirement for damages. No

17   such requirements exist to obtain restitution. Because a plaintiff must make this

18   additional showing to obtain damages, rather than restitution, the legal remedies are

19   more uncertain.

20   ## V.    CLASS ALLEGATIONS

21   79.    Plaintiffs bring this proposed class action lawsuit pursuant to Federal

22   Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and a

23   Class (the "Class") and a California subclass (the "California Subclass"; together

24   with the Class, the "Classes") of all others similarly situated, defined as follows:

25                a.    **Nationwide Class**: All persons who, within the applicable statute

26                      of limitations period, purchased one or more Products advertised

27                      at a discount on Defendant's Website.

28

b.  **California Subclass**: All persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Products advertised at a discount on Defendant's Website.

80.    Excluded from the Classes are: (i) any Judge or Magistrate presiding over this action and members of their families; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiffs' counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

81.    **Numerosity**: The exact number of members of the Classes is unknown and not available to Plaintiffs at this time, but individual joinder is impracticable. On information and belief, Defendant has many thousands of users who fall into the definition of the Classes. Members of the Classes can be identified through Defendant's records.

82.    **Commonality and Predominance**: There are questions of law and fact common to the claims of Plaintiffs and the alleged Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the members of the Classes include, but are not necessarily limited to the following:

a.  whether Defendant made false or misleading statements of fact in its advertisements;

b.  whether Defendant violated California's consumer protection statutes;

c.  whether Defendant committed a breach of contract;

-22-

d.    whether Defendant committed a breach of an express or implied warranty;

e.    damages needed to reasonably compensate Plaintiffs and the proposed class.

83.   **Typicality**: Plaintiffs' claims are typical of the proposed Classes. Like the proposed Classes, Plaintiffs purchased the Products advertised at a discount from Defendant. There are no conflicts of interest between Plaintiffs and the Classes.

84.   **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Classes. That is, Plaintiffs and the members of the Classes sustained injuries and damages as a result of Defendant's conduct. Plaintiffs also have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have any conflicts with or interests adverse to the Classes.

85.   **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Classes is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint as well as the risk of inconsistent adjudication. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Through a class action, economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

86.    Plaintiffs reserves the right to revise the foregoing "Class Allegations" and "Class Definitions" based on facts learned through additional investigation and in discovery.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA'S FALSE ADVERTISING LAW
### Bus. & Prof. Code §§ 17500 & 17501, *et seq.*
### (*On Behalf of Plaintiffs & the California Subclass*)

87.    Plaintiffs repeat and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

88.    Plaintiffs bring this claim individually and on behalf of the members of the California Subclass against Defendant.

89.    Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

90.    Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiffs and subclass members.

91.    As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (e.g., $~~1049~~) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices denoted as "regular" prices from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

92.    The prices advertised by Defendant are not Defendant's "regular" prices. In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the product in question), because there is always a heavily-advertised promotion ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements

1    about its discounts from those former prices, were untrue and misleading. In addition,

2    Defendant's statements that its discounts are "limited time" and only "valid" for a

3    certain time period are false and misleading too.

4         93.    In addition, Defendant has violated, and continues to violate, Section

5    17501 of the Business and Professions Code by advertising former prices that were

6    not the prevailing market price within three months next immediately preceding the

7    advertising. As explained above, Defendant's advertised "regular" prices, which

8    reasonable consumers would understand to denote former prices, were not the

9    prevailing market prices for the Products within three months preceding publication

10   of the advertisement. And Defendant's former price advertisements do not state

11   clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

12   Defendants advertisements do not indicate whether or when the purported former

13   prices were offered at all.

14        94.    Defendant's misrepresentations were intended to induce reliance, and

15   Plaintiffs saw, read, and reasonably relied on the statements when purchasing

16   Products. Defendant's misrepresentations were a substantial factor in Plaintiffs'

17   purchase decision.

18        95.    In addition, subclass-wide reliance can be inferred because Defendant's

19   misrepresentations were material, i.e., a reasonable consumer would consider them

20   important in deciding whether to buy the Products.

21        96.    Defendant's misrepresentations were a substantial factor and proximate

22   cause in causing damages and losses to Plaintiffs and the subclass.

23        97.    Plaintiffs and the subclass were injured as a direct and proximate result

24   of Defendant's conduct because (a) they would not have purchased Products if they

25   had known the truth, and/or (b) they overpaid for the Products because the Products

26   were sold at a price premium due to the misrepresentation.

27   //

28   //

-25-

CLASS ACTION COMPLAINT

1

**SECOND CAUSE OF ACTION**

2

**VIOLATION OF CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750,** *et seq.*
***(On Behalf of Plaintiffs & the California Subclass)***

3

4       98.    Plaintiffs repeat and re-allege all factual allegations contained in the

5   foregoing paragraphs as if fully set forth herein.

6       99.    Plaintiffs bring this claim individually and on behalf of the members of

7   the California Subclass.

8       100.   Plaintiffs and the subclass have engaged in "transactions" with

9   Defendant as that term is defined by California Civil Code § 1761(e).

10      101.   Plaintiffs and the subclass are "consumers," as the term is defined by

11  California Civil Code § 1761(d).

12      102.   The conduct alleged in this Complaint constitutes unfair methods of

13  competition and unfair and deceptive acts and practices for the purpose of the CLRA,

14  and the conduct was undertaken by Defendant in transactions intended to result in,

15  and which did result in, the sale of goods to consumers.

16      103.   A defendant must show it had the consent of all parties to the

17  communication.

18      104.   At all relevant times, Defendant aided, agreed with, and conspired with

19  third parties to track and intercept Plaintiffs' and the California Class members'

20  internet communications exchanged with Defendant while accessing Defendant's

21  website. Defendant assisted these interceptions without the requisite consent from

22  Plaintiffs and the California Class members.

23      105.   As alleged more fully above, Defendant made and disseminated untrue

24  and misleading statements of facts in its advertisements to subclass members.

25  Defendant did this by using fake regular prices, i.e., regular prices that are not the

26  prevailing prices, and by advertising fake discounts.

27

28

CLASS ACTION COMPLAINT

106. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

107. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

108. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

109. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available (4) misrepresenting the reason for the sale (e.g., "Christmas Sale," when in fact the sale is ongoing and not limited to Christmas).

110. Defendants representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

111. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

112. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass.

113.   Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they received products with market values lower than the promised market values.

114.   Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the subclass, seeks injunctive relief.

115.   CLRA § 1782 NOTICE. On February 13, 2026, a CLRA demand letter was sent to Defendant's registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant does not have a California headquarters. If Defendant does not fully correct the problem for Plaintiffs and for each member of the California Subclass within 30 days of receipt, Plaintiffs and the California Subclass will seek all monetary relief allowed under the CLRA.

116.   CLRA venue declarations are attached.

### THIRD CAUSE OF ACTION

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
***(On Behalf of Plaintiffs & the California Subclass)***

117.   Plaintiffs repeat and re-allege all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

118.   Plaintiffs brings this claim individually and on behalf of the members of the California Subclass against Defendant.

119.   Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

120.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1, § 233.2.

121.    As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false, misleading, and "deceptive."

122.    Defendant's representations were misleading to Plaintiffs and other reasonable consumers.

123.    Plaintiffs relied upon Defendant's misleading representations and omissions, as detailed above.

124.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

125.    Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, the FAL, and the FTCA).

126.    The harm to Plaintiffs and the subclass greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

127.   Plaintiffs and the subclass could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiffs.

128.   Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

129.   For all prongs, Defendant's representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Products. Defendant's representations were a substantial factor in Plaintiffs' purchase decision.

130.   In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Products.

131.   Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass members.

132.   Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

### FOURTH CAUSE OF ACTION

**BREACH OF CONTRACT**
**(*On Behalf of Plaintiffs & the Nationwide Class*)**

133.   Plaintiffs repeat and re-allege all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

134.   Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class against Defendant. In the alternative, Plaintiffs brings this cause of action on behalf of themselves and the California Subclass.

135.   Plaintiffs and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website.

136.   The contracts provided that Plaintiffs and class members would pay Defendant for the Products purchased.

137.   The contracts further required that Defendant provides Plaintiffs and class members with Products that have a market value equal to the regular prices displayed on the website. They also required that Defendant provide Plaintiffs and class members with a discount equal to the difference between the price paid, and the regular prices advertised. These were specific and material terms of the contract.

138.   The specific discounts were a specific and material term of each contract.

139.   Plaintiffs and class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

140.   Defendant breached its contracts with Plaintiffs and class members by failing to provide Products that had a "regular" price, former price, and/or prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount. Defendant did not provide the discount that it had promised.

141.   As a direct and proximate result of Defendant's breaches, Plaintiffs and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

## FIFTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
### (*On Behalf of Plaintiffs & the California Subclass*)

142.   Plaintiffs repeat and re-allege all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

143.   Plaintiffs bring this claim individually and on behalf of the members of the California Class against Defendant.

144.   Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

145.   This warranty was part of the basis of the bargain and Plaintiffs and members of the subclass relied on this warranty.

146.   In fact, the Product's stated market value was not the prevailing market value. Thus, the warranty was breached. Plaintiffs provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on February 13, 2026.

147.   Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

### SIXTH CAUSE OF ACTION

**BREACH OF IMPLIED WARRANTY**
***(On behalf of Plaintiffs & the California Subclass)***

148.   Plaintiffs and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

149.   Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

150.   As described in greater detail above, Defendant impliedly warranted that the Products had a market value equal to the regular price displayed on Defendant's website.

151.   This warranty was part of the basis of the bargain and Plaintiffs and members of the subclass relied on this warranty.

152.   In fact, the Products did not have a market value equal to the regular price displayed. Thus, the warranty was breached.

Plaintiffs provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on February 13, 2026.

153.   Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known the truth, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

## SEVENTH CAUSE OF ACTION

### QUASI CONTRACT/UNJUST ENRICHMENT
### *(On behalf of Plaintiffs & the Nationwide Class)*

154.   Plaintiffs and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

155.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class. In the alternative, Plaintiffs brings this claim on behalf of themselves and the California Subclass.

156.   As alleged in detail above, Defendant's false and misleading advertising caused Plaintiffs and the class to purchase Products and to pay a price premium for these Products.

157.   In this way, Defendant received a direct and unjust benefit, at Plaintiffs' expense.

158.   Plaintiffs and the class seek restitution.

## EIGHTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION
### *(On behalf of Plaintiffs & the California Subclass)*

159.   Plaintiffs and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

CLASS ACTION COMPLAINT

160.   Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

161.   As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and subclass members concerning the existence and/or nature of the discounts and savings advertised.

162.   These representations were false.

163.   When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

164.   Defendant intended that Plaintiffs and subclass members rely on these representations and Plaintiffs and subclass members read and reasonably relied on them.

165.   In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

166.   Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and subclass members.

167.   Plaintiffs and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

## NINTH CAUSE OF ACTION

**INTENTIONAL MISREPRESENTATION**
***(On behalf of Plaintiffs & the California Subclass)***

168.   Plaintiffs and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

-34-

CLASS ACTION COMPLAINT

169.    Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

170.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and subclass members concerning the existence and/or nature of the discounts and savings advertised.

171.    These representations were false.

172.    When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

173.    Defendant intended that Plaintiffs and subclass members rely on these representations and Plaintiffs and subclass members read and reasonably relied on them.

174.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

175.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and subclass members.

176.    Plaintiffs and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiffs and the Classes, and grant the following relief:

CLASS ACTION COMPLAINT

a.   For an order certifying the Classes and naming Plaintiffs as the representatives of the putative Classes and Plaintiffs' attorneys as Class Counsel to represent the putative Class members;

b.   For an order declaring that the Defendant's conduct violates the statutes and laws referenced herein;

c.   For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.   For damages, treble damages, and punitive damages where applicable in an amount to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For injunctive relief, restitution, and disgorgement, as pleaded or as the Court may deem proper;

g.   For an order awarding Plaintiffs and the putative Classes their reasonable attorneys' fees and expenses and cost of suit; and

h.   Any additional relief that the Court deems reasonable and just.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated: February 16, 2026

*/s/ Victor J. Sandoval*
Victor J. Sandoval, SBN 344461
**ALMEIDA LAW GROUP LLC**
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
562-534-5907
victor@almeidalawgroup.com

*Counsel for Plaintiffs & the Proposed Classes*

-36-